Susan Mary Rotkis
AZBAR 032866
Consumer Litigation Associates West, PLLC
Tucson, AZ 85701
520-622-2481 tel
520-844-6706 fax
srotkis@clalegal.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
Tucson

| | |
|---|---|
| MICHELLE BEGAY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTONS, LLC,<br><br>SERVE: CT CORPORATION SYSTEM<br>3800 N CENTRAL AVE SUITE 460<br>PHOENIX, AZ 85012<br><br>EQUIFAX INFORMATION SERVICES, LLC.,<br><br>SERVE: CORPORATION SERVICE COMPANY<br>2338 W ROYAL PALM RD STE-J<br>PHOENIX, AZ 85021<br><br>TRANSUNION, LLC., | Case No.:<br><br><br>JURY TRIAL DEMANDED<br><br>COMPLAINT |

COMPLAINT - 1

SERVE: PRENTICE-HALL CORP SYSTEM
2338 W ROYAL PALM RD STE-J
PHOENIX, AZ 85021

UNKOWN PUBLIC RECORD VENDORS,

        Defendants

Comes now, Michelle Begay, by counsel and for her Complaint against Defendants, alleges the following:

**Preliminary Statement**

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA.")

2. The consumer reporting agency (CRA) Defendants have inaccurately reported several derogatory items about the Plaintiff on her consumer reports.

3. All Defendants have reported that there is a lien of over $101,000.00 against the Plaintiff in Anne Arundel County, Maryland. This is untrue, there is no lien in any amount involving the Plaintiff in Anne Arundel County, Maryland.

COMPLAINT - 2

4. In addition, Experian has inaccurately reported that the Plaintiff is deceased and that she is joint owner of accounts with a complete stranger. Experian is also reporting that her car payments to Capital One Auto are past due and have been in a dismissed bankruptcy, when the are in fact current, on time, and are included in a Chapter 13 bankruptcy plan. Experian is also inaccurately reporting an Armed Forces Account twice as a charge-off.

5. TransUnion provided the inaccurate consumer report with a $101,000.00 lien to approximately 30 of its customers.

6. Experian provided the consumer report with its multiple inaccuracies to approximately 30 of its customers.

7. Equifax provided the inaccurate consumer report with a $101,000.00 lien to approximately 28 of its customers.

**Jurisdiction**

8. Federal question jurisdiction of the court is proper under the laws of the United States, 15 U.S.C. § 1681(p) and 28 U.S.C. § 1331.

9. Venue is proper under 28 U.S.C. § 1391(b) because the Defendants conduct significant business in the District of Arizona, maintain registered agents in this District,

COMPLAINT - 3

the Plaintiff lives in this District and Division, and the injuries incurred by the Plaintiff occurred in this District and Division.

**Parties**

10. The Plaintiff, MICHELLE BEGAY ("Plaintiff"), is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

11. EXPERIAN INFORMATION SOLUTIONS, LLC. ("Experian"), is a corporation authorized to do business in Arizona through its registered offices in Arizona.

12. Experian is a "consumer reporting agency," as defined by 15 U.S.C. § 1681(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties. Experian disburses consumer reports to third parties for monetary compensation and did so in this case.

13. EQUIFAX INFORMATION SERVICES, LLC., ("Equifax"), is a corporation authorized to do business in Arizona through its registered offices in Arizona.

14. Equifax is a "consumer reporting agency," as defined by 15 U.S.C. § 1681(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in

COMPLAINT - 4

15 U.S.C. § 1681(d) to third parties. Equifax disburses consumer reports to third parties for monetary compensation and did so in this case.

15. TRANS UNION, LLC., ("TRANS UNION"), is a corporation authorized to do business in Arizona through its registered offices in Arizona.

16. Trans Union is a "consumer reporting agency," as defined by 15 U.S.C. § 1681(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties. Trans Union disburses consumer reports to third parties for monetary compensation and did so in this case.

17. Unknown public records vendors collected, compiled, and sold public records information purportedly about Ms. Begay, including an inaccurate report that she was liable on a $101,000.00 lien in Maryland and that she was dead.

**FACTS**

18. About February of 2017, Ms. Begay applied to Pyramid Federal Credit Union ("Pyramid") in Tucson, Arizona in order to obtain auto financing.

19. Sometime after February 24, 2017, Ms. Begay received an adverse action letter from Pyramid with a statement of reasons that her application for credit had been denied.

COMPLAINT - 5

20. Included among the reasons were that she had a recent bankruptcy, that she had delinquencies, too many inquiries, a delinquent public record and "one or more tradelines with a deceased status."

21. Ms. Begay was in a Chapter 13 bankruptcy status, but she did not recognize the inaccurate descriptions of delinquencies, especially the public record delinquency and her deceased status.

22. The adverse action notice from Pyramid did not contain the identity of the consumer reporting agency that supplied the inaccurate and derogatory information to Pyramid.

23. Thereafter, Ms. Begay obtained her consumer report from each of the "Big Three" consumer reporting agencies (CRAs).

24. She discovered that all three CRAs were reporting materially inaccurate and damaging information about her.

25. Among other things, the Experian report had incorrect personally identifying information, including several wrong names. The Experian report contained an inaccuracy showing that she had a $101,000.00 lien in Anne Arundel County, Md.

26. The Experian report showed a Bank of America tradeline indicating that she was deceased.

COMPLAINT - 6

27. Experian has an obligation to investigate the accuracy of each and every tradeline before it is included in a consumer report. Experian cannot and does generate consumer reports for dead consumers, which makes it obvious that reporting her as deceased in connection with a Bank of America tradeline is erroneous.

28. The Experian report also showed that she had accounts that were the joint responsibility with a complete stranger. It reported accounts as delinquent that were not, a Capitol One Auto account as past due, and a Chapter 13 bankruptcy that was dismissed. In fact, monthly payments for the account were current and included in an active Chapter 13 bankruptcy.

29. The Experian report inaccurately reported an Armed Forces Account twice, and inaccurately reported it as a charge off.

30. According to the consumer report that Ms. Begay obtained, Experian had already supplied Ms. Begay's consumer report over 30 times to third parties with the inaccurate information.

31. Experian's collection and reporting of information in Ms. Begay's consumer report was exactly as Experian intended it to be. Experian's reporting about Ms. Begay was willful because it was carried out in reckless disregard for her rights as they are required by the Fair Credit Reporting Act.

COMPLAINT - 7

32. With respect to the public records reporting, Experian has intentionally established procedures for collection and reporting of public records information in a way to make more money for itself, to create greater economic value for its paying clients that purchase consumer reports, and to shift the cost of finding out about inaccuracies, disputing inaccuracies and correcting the consumer reports off onto unwilling consumers.

33. Experian has been on notice about the specific and systemic inaccuracies and limitations of its gathering, compiling and reporting of public records since at least 2009, *Soutter v. Experian Information Solutions*, and legal peril of failing to properly update public records reporting throughout the pendency of *Soutter v. Equifax Information Services, LLC*.

34. Experian has been substantial notice for decades that its business practices and procedures, including loose matching algorithms, give rise to mixing the files of consumers.

35. Ms. Begay is a victim of a "mixed file." Experian has mixed information in her file with that of a complete stranger.

36. In addition to being a "mixed file," by reporting names, addresses, accounts, and joint account holders that aren't hers, Ms. Begay is also the victim of Experian blindly reporting untrue information that it received from Bank of America that indicates she is deceased.

COMPLAINT - 8

37. As early as 1991, the Federal Trade Commission ("FTC") brought an enforcement action against Experian [formerly TRW, Inc.] in the United States District Court for the Northern District of Texas. *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Texas 1991). In settling the enforcement action brought by the AGs, Experian agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. Another enforcement action was brought against Experian by nineteen state attorneys general that resulted in a similar consent order as described in the previous paragraphs, including the procedures related to the prevention of mixed files and procedures to reinvestigate disputes resulting from mixed files. *See TRW, Inc. v. Morales*, Civil Action No. 3-91-1340-H (N.D. Tex. 1991).

38. Similar enforcement actions were brought in 1992 and 2016, which resulted in consent orders where all three CRAs agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files, among other things.

39. Despite the consent orders with the FTC and the Attorneys General, the Experian's computer system cause these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. They do this in order to sell more credit reports

COMPLAINT - 9

40. Experian has knowledge that its computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file"

41. Moreover, all credit bureaus have been sued repeatedly for failing to prevent mixed consumer files, including an $18.6 million dollar verdict against Equifax after it placed the information of another consumer into a plaintiff's record with the same name and failed to correct its errors. *Miller v. Equifax Information Services*, LLC, 3:11-cv-1231 (D. Or. 2011); *see also Calderon v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012); *Howley v. Experian Information Solutions, Inc.*, Civil Action No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Solutions*, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004); *Cartwright v. Experian*, et al., Case No. CV 09-427 (C.D. Cal. 2009); *Campbell v. Experian Info. Solutions, Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Solutions, Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001); *Williams v. Equifax Information Solutions, LLC*, No. 48-2003-CA-9035-O (Orange County 2007); *Apodaca v. Discover Financial Services*, 417 F. Supp. 2d 1220 (D.N.M. 2006)

COMPLAINT - 10

42. Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains have also been brought in this District and Division. *See e.g.*, *Mullins v. Equifax Information Services, LLC*, 3:05cv888, 2007 WL 2471080 (E.D. Va. August 27, 2007); *Saunders v. Branch Banking and Trust Co.*, 3:05cv731 (E.D. Va.); *Ross v. Experian Information Solutions, Inc.*, 3:09cv144 (E.D. Va. 2009); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax Info Servs.*, 510 F.3d 495 (4th Cir. 2007); *Chaudhary v. Experian Info. Solutions, Inc.*, Civil No. 3:13-cv-577 (E.D. Va. 2013).

43. Experian knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.

44. Despite these lawsuits and enforcement actions, Experian has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

COMPLAINT - 11

45. Upon information and belief, Experian has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

46. Accordingly, Experian's violations of 15 U.S.C. § 1681e(b) were willful and causes it to be liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

47. Experian's failure to modify its procedures caused substantial harm to the Plaintiff.

48. Experian's actions were accomplished through its agents, servants, and/or employees who were acting within the scope of their agency or employment, and under Experian's direct supervision and control.

49. Experian's actions were in accordance with its intent, policies, and procedures.

50. The Trans Union report was also inaccurately reporting a $101,000.00 Anne Arundel County lien that did not belong to Ms. Begay.

COMPLAINT - 12

51. According to the Trans Union consumer report that Ms. Begay obtained, Trans Union had supplied Ms. Begay's consumer report over 28 times to third parties with the inaccurate information.

52. The Equifax Report was also inaccurately reporting a $101,000.00 Anne Arundel County lien that did not belong to Ms. Begay.

53. According to the consumer report that Ms. Begay obtain, Equifax had supplied Ms. Begay's consumer report over 30 times to third parties with the inaccurate information.

54. Anne Arundel County, Maryland, has no record of a $101,000.00 lien related to the Plaintiff, yet all three CRA Defendants reported it as a fact.

55. Anne Arundel County, Maryland, has no actual court or other file reflecting a judgment lien of any kind against the Plaintiff. However, there exists a condensed electronic summary record showing a judgment lien of $10,000.00 against someone with a similar name, but which did not belong to the Plaintiff.

56. Upon information and belief, each of the CRAs obtain public record information from third party vendors, such as LexisNexis Risk Data Retrieval Services, LLC.

COMPLAINT - 13

None of the CRAs obtain public records directly from the state or local agencies that originate such public records.

57. In this case, none of the CRA Defendants obtained the erroneous public records information about Ms. Begay directly from the Anne Arundel County Courthouse.

58. Each of the CRAs obtained lien information from Unknown public records retrieval services vendors, which erroneous lien information each CRA decided to include in Ms. Begay's consumer report without having any reasonable procedure in place to ensure the record was accurate or that it belonged to Ms. Begay.

59. Each of the CRAs know that they do not receive the public records from the Anne Arundel Court, yet that is exactly what each identify as the source of the information on Ms. Begay's consumer report instead of disclosing the true source.

60. Each of the CRAs complied and published reports about Ms. Begay that contained inaccurate judgment lien information.

61. Because each of the CRAs rely on collection of public records by vendors with automated processes, they rarely, if ever, collect actual judgment lien information from any source. The CRAs do not update regularly public record judgment lien information either from the courthouses themselves or from their third-party vendors.

COMPLAINT - 14

62. The only time any of the CRAs perform a personal review of judgment lien information is when a consumer disputes the information. Each CRA regularly publishes public record judgment information it knows may be inaccurate, but relies instead on consumers to make disputes after learning of inaccuracies in their own consumer reports rather than paying to ensure that the item of information was correct before publishing it to third parties.

63. In this case, Ms. Begay's inaccurate report was sent by the CRAs collectively to over 78 third parties before Ms. Begay had reason to suspect what was happening.

64. Ms. Begay applied for a loan from Pyramid Federal Credit Union and was denied credit based in whole or in part on the presence of the public record judgment lien and/or the report that she was deceased.

65. Because Pyramid did not indicate which consumer reporting agency had supplied the inaccurate and harmful information, Ms. Begay obtained her consumer reports from all three CRAs.

66. All three Defendats' conduct in collecting and reporting the information about Ms. Begay was done as each intended to do, following their policies and procedures.

COMPLAINT - 15

67. All three CRAs reported inaccurate and harmful credit information about Ms. Begay utilizing policies and procedures it knows run the unreasonable risk of harming Ms. Begay and other consumers' rights.

68. In addition to suffering the loss of credit she applied for directly to Pyramid, Ms. Begay has suffered from a negative impact on her credit score.

69. Ms. Begay has suffered inconvenience, frustration, humiliation, lost time, emotional distress, physical illness and injuries, all resulting from the Defendants' inaccurate and derogatory consumer reporting.

70. All three Defendants were previously on notice that they had mixed Ms. Begay with another person with a similar name, yet none of the Defendants corrected the error or establish a procedure designed to prevent mixing her consumer report with another person in future.

## COUNT ONE:
### Violation of 15 U.S.C. § 1681e(b)
### EXPERIAN, EQUIFAX & TRANS UNION

71. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

COMPLAINT - 16

72. Experian, Equifax, and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

73. As a result of this conduct, action, and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment, frustration, lost time, and physical injuries.

74. Experian's, Equifax's, and Trans Union's conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

75. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, the Plaintiff demands judgment for compensatory, statutory, and punitive damages against the Defendants; for her attorneys' fees and costs; for pre-judgment and

COMPLAINT - 17

post-judgment interest at the legal rate, and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**.

/s/ *Susan Mary Rotkis*
Susan Mary Rotkis
Arizona Bar NO. 032866
Consumer Litigation Associates West, PLLC
Tucson, AZ 85701
(520) 622-2481 tel
(520) 844-6706 fax
srotkis@clalegal.com

Lisa C. Thompson
Arizona Bar No. 016794
THOMPSON LAW GROUP, P.C.
2321 E. Speedway Blvd.
Tucson, AZ 85719
(520) 882-5633 Phone
(520) 745-0616 Fax
Lisa@thompsonlawgroup.com

COMPLAINT - 18