Susan Mary Rotkis
AZBAR 032866
Consumer Litigation Associates West, PLLC
Tucson, AZ 85701
520-622-2481 tel
520-844-6706 fax
srotkis@clalegal.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHELLE BEGAY,<br><br>        Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>        Defendants | Case No.: 4:18CV99-RM<br><br>JOINT REPORT OF ATTORNEY CONFERENCE PURSUANT TO FED. R. CIV. P. 26(f)JOINT REPORT OF ATTORNEY CONFERENCE PURSUANT TO FED. R. CIV. P. 26(F) |

On May 9, 2018, counsel for the Parties to this action met and conferred by telephone in accordance with Fed. R. Civ. P. 26(f) the Court's Order of May 4, 2018. (ECF 17). The following attorneys participated in the conference:

        Susan M. Rotkis, on behalf of Michelle Begay

        Lisa C. Thompson, on behalf of Michelle Begay

        N. Charles Campbell, on behalf of Equifax Information Services, LLC

        Marc Kirkland, on behalf of TransUnion, LLC

        Jennifer Jiang, on behalf of Experian Information Solutions, Inc.

The Parties discussed the following matters and propose a plan for litigation of this matter:

**1.   The nature of the case and relief sought**:

JOINT REPORT OF ATTORNEY CONFERENCE PURSUANT TO FED. R. CIV. P. 26(F) - 1

**Plaintiff's statement of the case**:  This matter is brought by an Arizona consumer, Michelle Begay, against the "Big 3" credit reporting agencies for intentional violations of the Fair Credit Reporting Act, 15 U.S.C. 1681, *et sequi*.  Plaintiff was turned down for a car loan because her Experian credit report contained information that she was deceased and that she had over a $100,000 lien recorded in Maryland.  Experian's report that she was deceased was an obvious inaccuracy, as she is alive and well.  In addition, she does not have an over $100,000 lien in the state of Maryland.  Ms. Begay obtained her Experian consumer report and learned that not only was Experian reporting the lien and a Bank of America tradeline that indicated she was dead, Experian was reporting numerous tradelines, social security numbers, addresses, and co-obligors that didn't belong to her.  After learning of the outrageous Experian inaccuracies, she obtained her TransUnion and Equifax consumer reports as well.  She learned that they both were reporting the erroneous $101,000 Maryland lien.  All three CRAs provided more than 75 third-parties with Ms. Begay's erroneous consumer report.

What happened to Ms. Begay is a classic example of what is known in the consumer reporting industry as a "mixed file."  In fact, the frequency with which consumer reporting agencies mixed consumer files was one of the primary reasons for enacting the FCRA.  115 Cong. Rec. 2411 (1968)(the first example given by Sen. Proxmire in explaining the purpose of Senate Bill 823, which became the Fair Credit Reporting Act, was to address the frequency with which CRAs "confused one individual with another.")

Each of the consumer reporting agencies obtains information about consumers from numerous furnishers such as lenders and public records vendors.  Each of the consumer reporting agencies uses proprietary matching criteria to compile information about consumers, to generate and sell consumer reports about them.  The consumer reporting industry is well

aware that their matching criteria is susceptible of combining the wrong consumer information to create a grossly inaccurate and damaging consumer report about individuals who are the victims of a mixed file.

Ms. Begay alleges a violation of 15 U.S.C. 1681e(b) against each of the Defendants for their failure to use reasonable procedures to ensure the maximal accuracy of her report.  Section 1681e(b) requires, in pertinent part,

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1332 (9th Cir. 1995); *see also*, *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017)(explaining that the jury had substantial evidence to conclude that TransUnion willfully violated the FCRA by using name-only matching logic to code consumers as terrorists and drug dealers on the OFAC watch list); *Valenzuela v. Equifax Info. Servs., LLC.*, Civ. No. 2:13CV2259. 2015 WL 1097315, at * 1-2 (D.Az. March 5, 2015)(finding that evidence of similar mixed file complaints was proper discovery and ordering Equifax to produce five years of such complaints); *Calderon v. Experian Info. Sols., Inc.*, Civ. No. 1:11CV386, 2012 WL 2449853, at * 4 (D. Id. June 18, 2012)(same).   In addition to the unreliable and loose matching logic used by the CRAs to compile Ms. Begay's consumer report, all of the CRAs likely obtained the inaccurate lien information from LexisNexis and failed to assure that it was accurate by checking with the originating jurisdictions.  It remains an issue for discovery where the CRAs obtained the inaccurate lien information and whether they have properly disclosed the source of the information.

JOINT REPORT OF ATTORNEY CONFERENCE PURSUANT TO FED. R. CIV. P. 26(F) - 3

The FCRA provides for statutory and punitive damages for willful violations of the FCRA, along with attorneys' fees and costs. 15 U.S.C. § 1681n. The Plaintiff is seeking such damages in this case, and believes that she can demonstrate the continued use of faulty matching logic by each of the CRAs is a willful violation of the FCRA. In addition, the Plaintiff will show that Experian's reporting of that Ms. Begay was dead, that she had multiple social security numbers, addresses and co-obligors were illogical and internally inconsistent such that it was on notice that its report about Ms. Begay was mixed. In addition, all three CRAs have long been on notice that the information it obtains from LexisNexis and other third party public record vendors can't be relied on for accuracy and must be checked against the original source before reporting the information. Each CRA has been on notice of such problems for over ten years, having received a plethora of consumer disputes, agency complaints, enforcement actions, lawsuits and consent decrees by state attorneys general, and having defended dozens of federal cases, the CRAs eventually agreed to suspend the reporting of most public record information in July of 2017. However, the embargo on reporting such information did not extend to tax lien information, which did not come off consumer reports until April of 2018. The largest jury verdict to date for a willful violation of the FCRA in a mixed file case was $60 million in *Ramirez v. Trans Union, LLC.*, currently on appeal in the Ninth Circuit.

In addition, Plaintiff can show that she is entitled to actual damages that she suffered in the form of non-economic damages such as emotional distress and inconvenience, and damage to her creditworthiness and her ability to obtain credit. She can prove her entitlement to actual damages for willful or negligent violations of the FCRA. 15 U.S.C. §§ 1681n & 1681o; *Safeco Inc. Co. of Am. v. Burr*, 551 U.S. 47 (2007). She will also seek her attorneys' fees and costs. 15 U.S.C. §§ 1681n & 1681o.

**Experian's statement of the case**: As discovery has not yet commenced, Experian cannot provide the Court with a complete factual background of the case as it relates specifically to Plaintiff. Thus, Experian submits this statement based on the facts known to it at this time without waiving any defense and reserves the right to supplement this statement once discovery progresses and additional facts are developed. Experian can, however, state the following: Experian has sent Plaintiff credit disclosures, including a credit disclosure dated April 7, 2017. The consumer disclosure speaks for itself.Experian is a consumer reporting agency as that term is defined in the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. ("FCRA"). The FCRA is not a strict liability statute and does not require consumer reporting agencies to maintain error-free consumer files. Rather, the FCRA requires consumer reporting agencies to maintain and follow reasonable procedures to assure the maximum possible accuracy of the information they report regarding consumers. In recognizing that no credit reporting system can be error free, Congress specifically provided consumers with the ability to contact consumer reporting agencies to dispute information appearing on their credit disclosures.

Experian received a contact from Plaintiff on or about February 13, 2018 to dispute certain accounts on her file. Experian maintained and followed reasonable procedures to assure the maximum possible accuracy of the information on Plaintiff's consumer files. At all times, Experian acted in good faith and without malice or intent to injure Plaintiff, and Experian did not act negligently. Therefore, Experian denies causing any damage to Plaintiff and denies that Plaintiff is entitled to any of the relief sought in the Complaint. Experian further denies that it was the proximate cause of any damages alleged by Plaintiffs.

In making this statement, Experian does not waive any of its defenses and reserves the right to supplement as this case and the facts develop. Experian does not allege any damages at this time, but reserves the right to do so.

**Equifax's statement of the case**: Equifax is a consumer reporting agency as that term is defined by the FCRA. Equifax maintains it complied with the FCRA in its handling of Plaintiff's credit file, including its reinvestigations of Plaintiff's disputes. Equifax denies that it has caused Plaintiff to suffer any damages

**Trans Union's statement of the case**: On May 17, 2018, the Plaintiff and TransUnion filed a Notice of Settlement. (ECF 20.)

**2. The elements of proof necessary for each count of the Complaint and each affirmative defense, including a list of the elements of proof necessary when the burden shifts.**

**Plaintiff's burden of proof to prevail on her claims under 15 U.S.C. § 1681e(b):** Plaintiff must prove: (1) Experian, Equifax and Trans Union are consumer reporting agencies as defined by the Fair Credit Reporting Act, 15 U.S.C. 1681a(f); (2) the information that Experian, Equifax and Trans Union compiled, published and sold to third parties were consumer reports as defined by the Fair Credit Reporting Act, 15 U.S.C. 1681a(d); (3) consumer reports that Experian, Equifax and Trans Union compiled, published and sold to third parties were contained inaccurate information, *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995), *Loomis v. U.S. Bank Home Mort'g*, 912 F.Supp.2d 848, 855 (D. Ariz. 2012); (4) Experian, Equifax and Trans Union failed to follow reasonable procedures to assure maximum possible accuracy of the information about whom the reports relate as provided in 15 U.S.C.

1681e(b), *Guimond*, 45 F.3d at 1333; (5) Experian, Equifax and Trans Union violations were willful under 15 U.S.C. 1681n, *Safeco Inc. Co. of Am. v. Burr*, 551 U.S. 47 (2007), *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017) (quoting *Safeco*, 551 U.S. at 56–57), and Ninth Circuit's Model Civil Jury Instruction 5.5; (6) Experian, Equifax and Trans Union violations were negligent under 15 U.S.C. 1681o; (7) the Plaintiff suffered an injury in fact as a result of the Defendants' violations of the FCRA, *Syed*, 853 F.3d at 499-500; (8) actual damages, §§ 1681n & 1681o.

In the Ninth Circuit, the Plaintiff's obligation to demonstrate the Defendant's procedures are minimal following a showing of inaccuracy, and place the burden on the Defendant to show that its procedures were reasonable. *Guimond*, 45 F.3d at 1333; *Baker v. TransUnion, LLC*, 2010 WL 2104622 (D.Ariz. May 25, 2010) (to state a claim, a consumer need only prove that his report was inaccurate); *Cairns v. GMAC Mort'g Corp.*, 2007 WL 735564 (D.Ariz. Mar. 5, 2007). However, he FCRA does not impose strict liability. The Defendant is not liable if the Defendant is able to show that a report was inaccurate despite following reasonable procedures. *Guimond*, 45 F.3d at 1333. In other words, the Defendant must demonstrate that its procedures, as applied to Plaintiff's file, were reasonable to prevent inaccurate reporting. *Id* at 1334.

Affirmative Defenses:

Experian: Experian asserts its affirmative defenses as follows:

First, Plaintiff's claims fail to the extent that the Complaint, and each cause of action thereof, fails to set forth facts sufficient to state a claim upon which relief may be granted

against Experian and fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any other relief whatsoever from Experian.

Second, Plaintiff's claims fail to the extent that, at all relevant times with respect to Plaintiff, Experian acted in good faith and complied fully with the FCRA and relevant state laws.

Third, Plaintiff's claims fail to the extent that Plaintiff's purported damages were the direct and proximate result of the conduct of Plaintiff or others.

Fourth, Plaintiff's claim for punitive damages fails to the extent that the Complaint fails to state a claim for relief for punitive damages.  Additionally, Experian states that punitive damages violate its constitutional rights under the Constitution of the United States of America and the Constitution of Arizona.

Fifth, Plaintiff's claims fail to the extent that they are barred by the applicable statutes of limitation, including but not limited to 15 U.S.C. § 1681p or by the doctrine of laches.

Sixth, Plaintiff's claims fail to the extent that Plaintiff's purported damages, which Experian continues to deny, were the results of acts or omissions of third persons over whom Experian had neither control nor responsibility.

Seventh, Experian is informed and believes and thereon alleges that any alleged damages sustained by Plaintiff were, at least in part, caused by the actions of Plaintiff herself and/or third parties and resulted from Plaintiff's or third parties' own negligence which equaled or exceeded any alleged negligence or wrongdoing by Experian.

Eighth, any damages which Plaintiff may have suffered, which Experian continues to deny, were the direct and proximate result of the conduct of Plaintiff.  Therefore, Plaintiff is estopped and barred from recovery of any damages.

Ninth, Experian reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

Tenth, Plaintiff has failed to mitigate her damages.

Equifax: Equifax has not asserted any affirmative defenses.

TransUnion: On May 17, 2018, the Plaintiff and TransUnion filed a Notice of Settlement. (ECF 20.)

3. **The Factual and Legal Issues Genuinely in Dispute**:

   A. Whether Experian reported inaccurate information on Plaintiff's consumer report.

   B. Whether Equifax reported inaccurate information on Plaintiff's consumer report.

   C. Whether Trans Union reported inaccurate information on Plaintiff's consumer report.

   D. Whether Experian used reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer report.

   E. Whether Equifax used reasonable procedures to assure the maximal accuracy of Plaintiff's consumer report.

   F. Whether TransUnion used reasonable procedures to assure the maximal accuracy of Plaintiff's consumer report.

   G. Whether Experian's violations of the FCRA were willful or negligent.

   H. Whether Equifax's violations of the FCRA were willful or negligent.

JOINT REPORT OF ATTORNEY CONFERENCE PURSUANT TO FED. R. CIV. P. 26(F) - 9

I.  Whether TransUnion's violations of the FCRA were willful or negligent.

J.  The amount of statutory, actual, and punitive damages.

K.  Whether Plaintiff suffered any damages as a result of any alleged action or inaction of the Defendants.

4. **Federal Question jurisdiction exists pursuant to 28 U.S.C. § 1337 and 15 U.S.C. § 1681p.**

5. **All known parties are joined and have answered.**

6. **There are no known parties that are not subject to the court's jurisdiction**.

7. **Dispositive and partially dispositive issues that may be decided by pre-trial motions:** (1) whether the Plaintiff's consumer report was inaccurate; (2) whether the Defendants' procedures were reasonable; (3) whether the Defendants' conduct was willful; (4) whether Plaintiff suffered any damages attributable to the Defendants.

8. **Summary Judgment.** The Plaintiff anticipates that she will move for partial summary judgment or summary judgment on the following issues: (1) whether the Plaintiff's consumer report was inaccurate; (2) whether the Defendants' procedures were reasonable; (3) whether the Defendants' conduct was willful. Equifax also anticipates it will file a motion for summary judgment.

9. **Referral.** The parties do not believe that the case is appropriate for referral to arbitration or a United States Magistrate Judge for disposition of this case, nor is this case appropriate for retention of a Special Master. However, the Plaintiff [Parties] believe[s] that if this case is not resolved by informal

settlement discussions, referral to a United States Magistrate Judge for a settlement conference may be appropriate.

**10. Related Cases.** None.

**11. MIDP discovery responses shall be served on or before June 4, 2018.**

**12. No Party has identified MIDP issues at this time.**

**13. Changes or limitations to the Federal Rules of Civil Procedure**. The parties intend to proceed under the Federal Rules of Civil Procedure without and changes or limitations.

**14. Discovery.**  The Parties intend to engage in the following discovery to the extent that it is not provided in the Parties' MIDP responses or stipulated.  The Parties do not believe phased discovery is appropriate.

**Plaintiff's discovery**:  the Plaintiff intends to serve Requests for Production of Documents, Interrogatories, Requests for Admission, and take depositions of Defendants designed to discover the information needed to prove the elements of Plaintiff's claim.  For example, Plaintiff will seek information contained in each Defendant's files about the Plaintiff, how the Defendants obtained the information about the Plaintiff, from whom, for how much, and what they did to ensure the information it placed in the Plaintiff's file, consumer reports, and disclosures was maximally accurate. The Plaintiff intends to discover Defendants' policies and procedures regarding the collection, compilation and quality control of consumer reports, the matching logic used to include a stranger's information in Plaintiff's file, report and disclosure, whether they had information that alerted or should have alerted them to the fact that they included derogatory and other information about another person within Plaintiff's file, reports, and disclosures.  Plaintiff intends to learn of the extent of Defendants' knowledge of and strategies to

eliminate mixed consumer files.  Plaintiff intends to take the deposition of Defendants' corporate designees as well as fact witnesses regarding the Plaintiff's file, report and disclosure, the development and implementation of the policies and procedures for procuring and compiling consumer information and assuring maximal accuracy.  Plaintiff intends to learn how the mixed file effected Defendants' assessment of Plaintiff's credit worthiness.  Plaintiff intends to learn the net worth of each Defendant and their ability to pay a punitive damages award.  Plaintiff intends to learn how much money the Defendants make from collecting, compiling, and disbursing consumer reports, and whether and how the mixed-file problem affected that income.

The Plaintiff also intends to conduct third-party discovery of the and furnishers that vendors that provided the information to the Defendants that they attributed to the Plaintiff.

The Plaintiff intends to take the depositions of the Defendants and third parties' corporate designees and fact witnesses by videoconference in order to conserve resources and reduce inconvenience on the parties, counsel and the witnesses.

Experian's Discovery: Experian intends to conduct discovery including Requests for Admission, Requests for Production of Documents, Interrogatories and Depositions. Experian anticipates that depositions will be conducted by videoconference to conserve resources and minimize inconvenience of witnesses. Experian intends to conduct discovery related to: Plaintiff's allegations in the complaint and Plaintiff's alleged damages.  Defendant may also seek discovery regarding the following or any other permissible topic under the Federal Rules of Civil Procedure: the persons, entities or creditors who extended or denied Plaintiff credit; Plaintiff's credit applications, Plaintiff's credit history, the reasons Plaintiff was granted or denied credit, and any related communications or correspondence with Plaintiff.

Equifax's Discovery: Equifax intends to pursue the same discovery described by Experian.

Trans Union's Discovery: On May 17, 2018, the Plaintiff and TransUnion filed a Notice of Settlement. (ECF 20.)

15. The Plaintiff intends to serve written discovery electronically and will request that the responses be provided in searchable, portable document format by email or Plaintiff's FTP.  Subpoenas to third parties will be narrowly tailored to minimize inconvenience on the third parties.  Experian intends to serve written discovery electronically and will request that responses be provided in a searchable, portable document format by email or FTP.  Equifax also intends to serve written discovery as described by the other Parties.

16. **Privileged information and Work Product**: All parties agree that none are seeking privilege information and work product that arose as solely as a result of this attorney client relationship in this case.  Otherwise, any information about which a party knows is responsive under the MIDP shall be identified in a privilege log on or before July 14, 2018.  Any privileged or work product information about which a party knows is responsive to written discovery shall be identified in a privilege log and served at the time objections are due.

17. **Evidentiary Hearings**:  The parties reasonably anticipate that motions in limine, including a Daubert motion, will be filed and hearings on such motions will be necessary prior to trial.

JOINT REPORT OF ATTORNEY CONFERENCE PURSUANT TO FED. R. CIV. P. 26(F) - 13

**18. Jury Trial**: All parties agree that a jury trial has properly been requested and no one disputes that it is proper.

**19. Date the Case will be Ready for Trial**: The case should be ready for trial not later than March 9, 2019. Early stipulations and/or rulings on summary judgment will narrow the issues to be tried. A two-day trial is requested.

**20. Prospects for Settlement**: this case represents a familiar FCRA fact pattern with experienced counsel representing the parties. All counsel have already discussed the prospect of early settlement. Should counsel be unable to resolve the matter informally, the assistance of a magistrate judge will aid the parties in arriving at a just compromise.

**21. Class Actions**: at this time, this case is not pled as a class action.

**22. Complexity requiring special case management**: at this time, the case is not appropriate for placement on a complex track.

**23. Other matters aiding in just, expeditious, and efficient resolution:** None.

**24. Proposed Deadlines**:

(a) additional parties or amended pleadings: June 1, 2018

(b) discovery: November 21, 2018

(c) filing settlement status reports: October 31, 2018

(d) filing dispositive motions: January 31, 2019

(e) disclosure of expert testimony under Rule 26(a)(2)(c):

Expert Disclosures: December 9, 2018

Rebuttal Expert Disclosures: January 9, 2019

(f) Joint Proposed Pretrial Order: May 9, 2019

JOINT REPORT OF ATTORNEY CONFERENCE PURSUANT TO FED. R. CIV. P. 26(F) - 14

|   |   |
|---|---|
| 1 | */s/ Susan Mary Rotkis* |
| 2 | Susan Mary Rotkis |
|   | AZBAR 032866 |
| 3 | Consumer Litigation Associates West, PLLC |
| 4 | Tucson, AZ 85701 |
| 5 | 520-622-2481 tel |
|   | 520-844-6706 fax |
| 6 | srotkis@clalegal.com |
| 7 | Attorney for Michelle Begay |
| 8 |   |
|   | */s/Adiba Jurayeva* |
| 9 | Adiba Jurayeva |
|   | Snell & Wilmer LLP - Phoenix, AZ |
| 10 | 1 Arizona Center |
| 11 | 400 E Van Buren |
|   | Phoenix, AZ 85004 |
| 12 | Telephone: 602.382.6000 |
|   | Fax: 602.382.6070 |
| 13 | Email: ajurayeva@swlaw.com |
| 14 |   |
|   | Attorney for Equifax Info. Servs., LLC., |
| 15 |   |
| 16 | */s/ Jonathan A. Dessaules* |
|   | Jonathan A. Dessaules, SBN 019439 |
| 17 | DESSAULES LAW GROUP |
|   | 5353 N. 16th Street, Suite 110 |
| 18 | Phoenix, AZ  85016 |
|   | Telephone:  (602) 274-5400 |
| 19 | Facsimile:  (602) 274-5401 |
| 20 | Email:  jdessaules@dessauleslaw.com |
| 21 | Local Counsel for Experian Info. Sols., Inc. |
| 22 |   |
|   | */s/ J. Neil Stuart* |
| 23 | J. Neil Stuart |
|   | **COHEN DOWD QUIGLEY** |
| 24 | PHONE: 602.252.3742 |
|   | EMAIL: nstuart@CDQLaw.com |
| 25 | The Camelback Esplanade One |
| 26 | 2425 East Camelback Road, Ste 1100 |
|   | Phoenix, Arizona 85016 |
| 27 |   |
|   | Attorney for TransUnion, LLC. |
| 28 |   |

JOINT REPORT OF ATTORNEY CONFERENCE PURSUANT TO FED. R. CIV. P. 26(F) - 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT REPORT OF ATTORNEY CONFERENCE PURSUANT TO FED. R. CIV. P. 26(F) - 16